GEORGE W. PICKERING and others, Petitioners for Review,

*vs.*

JOHN CASSIDY.

Penobscot. Opinion July 22, 1899.

*Review. Accident, Mistake or Misfortune. R. S., c. 89, § 1, par. VII.*

1. The words "accident, mistake or misfortune" used in paragraph VII of § 1, ch. 89, R. S., authorizing the court to grant reviews, ordinarily import something outside of the petitioner's own control, or at least something which a reasonably prudent man would not be expected to guard against or provide for. Mere omissions, or blunders, or errors of judgment on the part of the petitioner are not within the purview of the statute.

2. It is the duty of the litigant parties to be diligent in searching for and producing to the court in the first instance all the data they desire the court to consider in making up its judgment.

3. A judgment of the court afterward shown to be erroneous because of imperfect and too scanty data furnished by the parties is not therefore unjust, as to those parties.

4. A mere error in reasoning on the part of the court or tribunal, where none of the material data furnished by the parties has been overlooked, is not sufficient ground for re-opening a litigation once regularly concluded and set in a judgment.

5. The mere fact that an unsuccessful litigant by new and greater efforts made after a trial has discovered more and better evidence, which would probably change the result, does not entitle him to a new trial.

6. A new trial will not be granted for newly-discovered evidence when it appears probable that the same efforts that were made after the trial, if made before, would have discovered the same evidence.

7. A review of a real action, once tried and ended in a judgment where the issue was as to the existence of an old boundary line upon the earth's surface, will not be granted to let in evidence of surveyor's marks and other indicia of such a line discovered after the trial, when it is not made to appear that they could not have been discovered before the trial by the same amount of diligence and effort.

See *Stetson* v. *Adams*, 91 Maine, 178.

ON REPORT.

This was a petition for review dated January 21, 1898. The facts are stated in the opinion.

*Charles H. Bartlett*, for petitioners.

The statute applies to cases decided by a referee under rule of court. *Gooding* v. *Baker*, 60 Maine, 52.

In *Morrell* v. *Kimball*, 1 Maine, 322, (1821), WESTON, J., on page 324, says: "As reviews no longer exist as a matter of right, it has become the more necessary that the Court should be governed by liberal principles in the exercise of their discretion, that there may be no occasion again to resort to the legislature for the restoration of this process as a writ of right, which was formerly productive of much mischief in practice."

Newly-discovered evidence which should be passed upon by the jury and which has a tendency to change the result is ground for a review, if the petitioner is not guilty of negligence or laches in not having presented it at the trial. *Wilbur* v. *Dyer*, 39 Maine, 169, (1855); *Dwinel* v. *Godfrey*, 44 Maine, 65, (1857). The great object in view is the furtherance of justice and the prevention of injustice. APPLETON, C. J., in *Gooding* v. *Baker*, supra, p. 53. A review may be granted for a mistake of law. *Bowditch Mutual Fire Insurance Company* v. *Winslow*, 3 Gray, 415, (1855).

The court may grant a new trial if the verdict of a jury is against the law. The referee stands in the place of the jury, and a review is nothing more than a new trial in another form. In specifying the cases in which reviews may be granted, it was not the intent of the legislature to restrict the power of the court. The tendency of legislation has been in the direction of increasing the power of the court in granting reviews, in order to

prevent the triumph of wrong. APPLETON, C. J., in *Gooding* v. *Baker*, supra, p. 54.

The period of six years was fixed upon as a fair compromise between contending claims of public policy. On the one hand, to end litigation at some reasonable time ; on the other, to reasonably preserve the rights of litigants, that justice might be done.

The referee did not determine the real question submitted to him. The real question in the case was: Where was the Weston line of 1794 located on the face of the earth between these two towns ?

As far as that line extended, it was the division line, until it came to the territory last lotted by agreement to a more southerly line. It had never been abandoned. *Stetson* v. *Adams*, 91 Maine, 178.

The question was as to location of that spotted line of 1794 wherever it went. Although Weston left no field notes, yet he did leave a spotted line through the woods and a plan. Nothing is more firmly established in this State than that, in such case, the survey must govern when its location can be shown ; when it cannot be, then the plan may locate it. *Bean* v. *Bachelder*, 78 Maine, 184; *Stetson* v. *Adams*, supra.

The petitioners submit that, upon the facts he had before him, not one of the referee's findings or decisions of law was correct.

(1.) That he utterly misconceived the question submitted to him for decision;

(2.) That he began at the wrong end of the line, to wit, to the east at the end of a compromise line not on the Weston range line, instead of at the west, or the original range line ;

(3.) That he erroneously concluded that Weston did not run a range line where Sewall himself found the spotted trees;

(4.) That he refrained from referring to the Weston spots he cut out of the trees and admits were made in 1794;

(5.) That, while in the report he denies they were evidence of a line, he now admits the line was run to Endless Lake and that there was a poorer line to the eastward of the Lake. His decision

should have been in favor of the plaintiffs west of the Lake anyway according to his own testimony;

(6.) That he abandoned a well defined line for an incorrect map;

(7.) That his method of determining the course of trees by platting bunches of them and taking the general course, instead of running a long try line, is incorrect;

(8.) That he failed to get a proper course with his compass;

(9.) That, instead of finding the true line, he adopts an arbitrary one drawn by himself;

(10.) That he erroneously concluded that the line of 1794 was abandoned.

No negligence can be found against the plaintiffs; they employed one of the best surveyors of his time, who testified that the line, after a personal examination thereof, was as the plaintiffs claimed.

This newly-discovered evidence is vital, admissible, would entirely change the result of the action, and could not have been discovered in season before the other suit. When it is considered that these spots were made more than a century ago by men who were operating in a trackless forest, far from the smallest settlements, with unimproved means of survey, it is not strange that lines should waver considerably or that errors should have been made. Mr. Oakes testifies that this is one of the best old woods lines he ever saw.

When it is considered that it requires the utmost skill to find these old spotted trees, that even the most skillful man will pass them by at one time of the day and on some days, and at another time and another day, will see them, the only wonder is that the line is ever found at all.

*C. P. Stetson* and *H. Hudson*, for defendant.

Mr. Sewall, the referee, and whose report is sought to be reversed is a civil engineer of great skill and experience; he gave to the case great and continued care and labor, going upon the land in controversy at three different times, examining all records in Maine and

Massachusetts bearing upon the question, sparing no expense and labor, which would give him a thorough knowledge of the question in controversy and enable him to render a correct decision. The plaintiffs in the original action based their claim to the land in controversy upon the statements and testimony and deposition of Noah Barker, a surveyor. Sewall had in his examination of the case that deposition, Barker's field notes and all the facts, information and evidence which Barker had. The alleged newly-discovered evidence, which the petitioner relies upon, was known to Barker and to Sewall. This is not such a case as comes within the statute entitling the petitioner to a review.

The petitioner does not show any fraud, accident, mistake or misfortune, or that a further hearing would be just and equitable.

A writ of review is an unusual remedy, given when justice seems to require it, in cases where without fault or negligence one has lost or has failed to obtain an adequate remedy in the ordinary forms of procedure which were open to him in the original action, cases of accident, or mistake, or of a discovery of material facts which could not be presented at the trial, are familiar instances in which this kind of relief is granted. But it is the policy of the law to make an end of litigation when the parties have once had an opportunity to be fully and fairly heard. *Stillman* v. *Donovan*, 170 Mass. 360.

Courts are reluctant to grant a new trial for the discovery of new testimony. They require vigilance on the part of those in litigation in discovering and procuring material and important testimony. *Trask* v. *Unity*, 74 Maine, 208.

Courts will not grant a review to try a case over again when it is claimed there is an error of judgment only, in the original verdict or decision.

The plaintiffs were moved to institute this petition by the verdict and decision in the case of *Stetson* v. *Adams*, 91 Maine, 178.

But that case is not like this.

No new evidence was introduced by petitioners which, were the case re-opened, would give grounds for different conclusions from those given by referee.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

EMERY, J. The history is this: The petitioners were the owners of the west half of Township No. 3, Range 8, North of the Waldo Patent in, Penobscot county. The respondent was the owner of the half township next north viz:—the west half of Township No. 3, Range 9. Hence the original division line between the two tracts was the original range line running east and west between Range 8 on the south and Range 9 on the north. This original range line, if ever actually run between the townships, (Nos. 3 in each range) was run in 1794 by Samuel Weston appointed surveyor for that purpose by the proper officers of Massachusetts. Weston's plan showed a range line from a town corner of the east line of "The Million Acre Tract," so-called, in Somerset county through what is now part of Piscataquis county and what is part of Penobscot county to the Penobscot River on the east at a place known as the "Three Islands," a natural monument. This plan shows the range line between the two townships Nos. 3 to be equally distant from the south line of Range 8 and the north line of Range 9, and hence the two tracts in question to be of equal length north and south. For many years there was what was, at least, a conventional line recognized by the owners between the two tracts, corresponding substantially to the line upon the Weston plan.

In 1878, however, Noah Barker, an eminent surveyor of that day, was sent on this territory by parties interested (including these petitioners) to find and trace if possible the original Samuel Weston range line as actually run on the earth's surface. Mr. Barker reported that he found an old east and west line across the tract comprising the two townships Nos. 3 something over a mile north of the conventional line, or the line shown on the plans. This line, from various indications and for various reasons, he concluded to be on the original line actually run by Weston as the Range line in 1794. Upon the strength of these indications and reasons the petitioners afterward, in 1887, brought a real action against the respondent in which they demanded the parcel between

the conventional or plan line on the south, and a line "one mile, thirty-four chains and seventy-four links" distant northerly therefrom, on the north. This north line of the demanded parcel the plaintiffs described as "the northerly line of said township (No. 3. R. 8.) as run by Samuel Weston in 1794." This action was entered in Penobscot county and continued along till the January term, 1889, when it was referred by the parties generally and unconditionally to James W. Sewall, a surveyor. There does not appear to have been any formal trial before the referee. After learning the contentions of the parties, he was left by them to make his own investigations of records, plans, field notes, documents, etc., and also to make his own investigations upon the surface of the earth, by examining indicia theretofore found and by searching for additional indicia. He was also furnished with the deposition of the surveyor, Barker, taken in the case. At the January term, 1892, after a lapse of three years, the referee made his award in favor of the defendant and against the plaintiff's claim that the line found by Barker in 1878 was a line run by Weston as a range line in 1794. He filed with his award a detailed statement of his investigations and discoveries and his conclusions therefrom leading him to the resulting award. It does not appear that either Mr. Sewall, or Mr. Barker, made any research west of townships Nos. 3. Judgment was rendered at that term on this report without objection, and there this matter rested for a while.

A few years later the owners of the township next west of the respondent's township, viz: Township No. 4 in the same range, R. 9, perhaps induced thereto by the result of the real action between these parties, brought a real action against the owners of the township next south, No. 4 in Range 8, being the township next west of the petitioners' township. The parcel demanded was substantially that between the line found by surveyor Barker in 1876 extended west as the north line, and, as the south line, the "plan line" or the extension west of the line thus adjudged to be the line between the two townships Nos. 3. At any rate, in this latter action, as in the former action, the question was as to the location

upon the earth's surface across the Townships of the range line between Range 8 and Range 9. That line by the plans was as claimed by the owners of the north township, and the burden was upon the owners of the south township to show that, notwithstanding the plan, a line was actually run by Samuel Weston in 1794 across these townships Nos. 4 and north of the demanded parcel as and for the range line between Range 8 and Range 9. They assumed this burden and with great industry and much expense discovered and traced an ancient line bearing surveyor's marks as old as 1794 from the east line of the "Million Acre Tract" in Somerset county, east between various towns and townships, and across townships Nos. 4 and even farther, across townships Nos. 3. At the trial of the case before a jury in the court in Piscataquis county (townships Nos. 4 being in that county) the owners of the south township produced the evidence of this discovery and tracing of a line showing ancient spots and other indicia all along from the "Million Acres" to the east line of townships Nos. 3 and across the townships Nos. 4 so strongly indicating that the line thus found was the line run by Samuel Weston in 1794, as and for the range line between Range 8 and Range 9, the jury readily found in their favor. This finding was approved by the court upon a motion for a new trial, and January 3, 1898, judgment was ordered on the verdict. *Stetson* v. *Adams*, 91 Maine, 178.

Within thirty days after the opinion in the Piscataquis case was announced, the unsuccessful litigant in the Penobscot case before described, that concerning the location of the range line between townships Nos. 3, brought this petition for leave to review the old action in that case which had gone to judgment in 1892, almost six years previously. The petition is based on the seventh clause of § 1 of chap. 89, R. S., viz:—

Chap. VII. "A review may be granted in any case where it appears that through fraud, accident, mistake or misfortune, justice has not been done, and that a further hearing would be just and equitable, if a petition therefor is presented to the court within six years after judgment."

There is no suggestion of any failure of justice through fraud;

and, therefore, the only question for the court is whether it appears from the evidence that there has been any such failure of justice "through accident, mistake or misfortune" that "a further hearing would be just and equitable."

Undoubtedly, as contended by the petitioners, the statute confers upon the court a broad power and one the court should exercise freely to grant relief from unjust judgments. But a judgment ultimately discovered to be erroneous because based upon too few data is not therefore unjust. It is the duty of litigants to supply the data, to adduce evidence and argument. It is their duty to be diligent in this work. If judgment goes against a litigant by reason of his neglect to appear, or by reason of the insufficiency of his evidence or argument, he has not thereby suffered an injustice, but rather the natural consequences of his own neglect. The words "accident, mistake or misfortune," used in the statute, to describe the source of the injustice which would make a further hearing just and equitable, ordinarily import something outside of the petitioners' own control, or at least something which a reasonably prudent man would not be expected to guard against or provide for. It has long been regarded as essential to public order, security, and confidence that, when parties have once had their full day in court when and where they had full opportunity to bring forward their evidence and the evidence produced has been fully and fairly considered, they should abide the result, even though renewed efforts afterward should secure other and better evidence which if seasonably obtained might have changed the result. It cannot have been the intention of the legislature to destroy this rule and destroy all reliance upon court judgments, by requiring or even authorizing the court to open them as often as the defeated party discovers some new evidence or argument.

Nor is every mistake, either of the tribunal or the party, such a mistake as the statute contemplates. Mere mistakes in opinion or judgment are outside of the statute, where no data were accidentally overlooked. If a party was erroneously of the opinion that a particular piece of evidence was valueless, and so omitted to produce it, such a mistake does not entitle him to a new trial. Even

if the court of last resort, without overlooking any data before it, draws erroneous conclusions in reasoning, its judgment should not for that cause alone be subject for reversal after having been deliberately rendered. For such mistakes, which at the most are mere errors in reasoning, to be allowed as causes for reversing solemn judgments after hearing and deliberation, would destroy all their value as authoritative adjudications of title and rights. It never could be known how long any reasoning would be regarded as sound. A third process might reverse the second and affirm the first and so on ad infinitum.

The meaning of the words "accident, mistake or misfortune" as used in the statute can be illustrated by some of the decided cases. In *Warren* v. *Hope*, 6 Maine, 479, it was said that an exception to the rule refusing new trials was where a witness, whose testimony was against the petitioner, subsequently ascertained that he was mistaken and that the facts he testified to did not actually exist. In *Knight* v. *Bean*, 19 Maine, 259, the appellant erroneously supposed the clerk would send the necessary papers to the commissioner appointed to take the recognizance for appeal. Immediately upon learning that this had not been done, he procured the papers, entered into the recognizance and transmitted it to the clerk, but it did not reach the office in season. It was held that such a mistake could be relieved against. In *Starbird* v. *Eaton*, 42 Maine, 569, it was said that reviews would be granted to correct mistakes in computation. In *Shurtleff* v. *Thompson*, 63 Maine, 118, a review was granted because the attorney, upon whom the petitioner relied to appear for him in the original action, mistakenly supposed that another attorney was to appear in that case, and so failed to enter his own appearance. All these were cases of clear accidents or mistakes within the statute. In *Howard* v. *Grover*, 28 Maine, 97, the action was against a surgeon for alleged malpractice. After verdict against him the defendant asked for a new trial to let in expert evidence of surgical facts, before unknown to him. The motion was denied, the court observing that the defendant should have learned those facts before the trial. In *Hunter* v. *Randall*, 69 Maine, 183, there was

a question whether certain letters were in the defendant's handwriting. After verdict against him, the defendant sought for a new trial to enable him to put in expert evidence in support of his denial of the handwriting, none such having been offered at the trial. The motion was denied on the ground that the defendant should have secured such evidence for the first trial. In *Blake* v. *Madigan*, 65 Maine, 522, there was a question as to the quantity of water used by the defendant's water wheels. After verdict against him the plaintiff sought for a new trial upon the ground that he had found experts in hydraulics who would support his contention. The court held that such evidence could have been found in season for the first trial. In *Maynell* v. *Sullivan*, 67 Maine, 314, a new trial was refused to let in testimony of witnesses found since the trial as to the condition of the planking on the bridge, that being one of the issues. In *McLaughlin* v. *Doane*, 56 Maine, 289, a new trial was refused to let in testimony of witnesses found since the trial who saw the collision in question. *Hunter* v. *Heath*, 67 Maine, 507, was a real action where the question was as to the location of a boundary line on the earth's surface. After verdict against him the plaintiff discovered certain deeds affecting the case, and also had a new survey made. He asked for a new trial that he might offer in evidence the facts thus discovered. The court held that he was bound to have sought for and produced all this evidence at the first trial,—that the same efforts made after the trial, if made before, would have produced the same results in the discovery of evidence. In *Carpenter* v. *Sellers*, 38 Maine, 427, parol evidence of the contents of a deed was excluded upon the ground that the loss of the deed itself was not sufficiently proved and thereupon the defendant was defaulted. After judgment against him he found the deed itself and asked for a review that he might put it in evidence. The petition was denied, the court observing: "The petitioner chose to risk the issue of his suit upon the evidence which was adduced." *Brooks* v. *Belfast & Moosehead Lake Railroad Co.*, 72 Maine, 365, was originally an action upon the town's subscription to the railroad company's capital stock. The town admitted that enough stock had been

subscribed for to comply with that condition. After the judgment in favor of the railroad company, the town petitioned for a review alleging that its admission as to amount of stock subscribed for was made by mistake and in ignorance of some of the circumstances,—that the subscriptions of certain other towns supposed to be valid were in fact invalid, and hence the necessary amount was not in fact subscribed for. The petition was denied upon the ground that all the facts were accessible and could have been ascertained by the town before the trial. In *Feder* v. *Iowa State Traveling Men's Association* (Iowa) 43 L. R. A. 693, it was said that the fact that a result was not designed, foreseen or expected does not make it accidental, if it was the natural and direct effect of voluntary acts or omissions or of conditions voluntarily assumed.

Recurring to the circumstances of this case, it must be evident there was no "fraud, accident, mistake or misfortune" within the purview of the statute as above explained. The petitioners' burden in the original action was to establish the fact that Samuel Weston, in 1794, actually ran a now ascertainable line across townships Nos. 3 north of the demanded parcel as and for the range line between those two townships. They contented themselves with surveyor Barker's discoveries between the east and west lines of the townships. As to other evidence, they intrusted the entire task of making further researches for evidence to the referee. He considered all the evidence he found and all that was submitted to him, drew his inferences, and made his award. With the reasons for the award on file accessible to the parties, the award was accepted and judgment rendered upon it. So far as appears, any mistake of the referee was a mistake in reasoning which alone, as already stated, is no ground for disturbing the judgment. So far as he overlooked any data in his researches, his neglect was that of the party intrusting him with the duty of research, and is no ground for relief. So far as the new evidence is concerned, it is as to the existence of traces of the Samuel Weston line of 1794 on the earth's surface all along from the "Million Acres" to the eastward of the demanded parcel and along its north line. All these traces existed before the trial, and were as accessible to the peti-

tioners, as they were to the diligent party who searched for them, found them, and successfully availed himself of them in the trial of *Stetson* v. *Adams*, supra. They are such traces and in such places as would naturally be sought for by a party desiring to establish such a line. There is no suggestion that the petitioners by illness, poverty, or other misfortune, or even accident, were unable to make the search. They simply relied voluntarily upon insufficient evidence when they might have procured more, better and perhaps sufficient evidence. Reserving to the court the full power of the statute to grant a review in any other case where it may seem that justice has not been done, in this case for the reasons given we think that power should not be exercised.

*Petition denied with costs.*